UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA LEE and PIERRE MONTMEAS, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>-against-<br><br>BEN PASTERNAK; B24, INC.; BELIEVE FOUNDATION; and DOES 1 THROUGH 10,<br><br>Defendants. | Case No. 1:26-cv-2368 (DEH) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
BEN PASTERNAK AND B24, INC.'S
<u>MOTION TO COMPEL ARBITRATION OR TO DISMISS THE COMPLAINT</u>**

MORRISON COHEN LLP
Jason Gottlieb
Michael Mix
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendants Ben Pasternak and B24, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................. 2

   I.    THE COURT SHOULD COMPEL ARBITRATION.......................................... 2

      A.  Plaintiffs Agreed to Arbitrate................................................................ 3

      B.  The Arbitration Agreement Encompasses Plaintiffs' Claims ..................... 4

      C.  Both Pasternak and B24 Can Compel Arbitration ..................................... 6

  II.    THE COURT LACKS PERSONAL JURISDICTION OVER B24................................ 7

 III.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS REGARDING
       $PASTERNAK OR $BELIEVE TOKENS ..................................................... 10

 IV.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MOVING
       DEFENDANTS ............................................................................................ 12

      A.  The Complaint Fails to State a Claim Under New York GBL §§ 349 and 350 ........... 12

          *1.  Plaintiffs Cannot Invoke GBL §§ 349 and 350 Because They Did Not Enter
             Into Transactions in New York* ............................................................. 13

          *2.  The Alleged Statements Are Not Actionable Under GBL §§ 349 and 350* ........... 14

          *3.  The Complaint Fails to Sufficiently Allege Any Relationship Between the
             Allegedly Deceptive Statements and the Injury* ...................................... 17

      B.  The Complaint Fails to State a Claim Under California's UCL or FAL ..................... 17

          *1.  Extraterritoriality Bars the UCL and FAL Claims* ................................... 18

          *2.  Plaintiffs Have an Adequate Remedy at Law* ......................................... 19

          *3.  Plaintiffs Fail to Meet the Elements of the UCL and FAL Claims* ................. 20

      C.  The Complaint Fails to State a Claim for Negligent Misrepresentation ..................... 21

      D.  The Complaint Fails to State a Claim for Unjust Enrichment ..................................... 23

CONCLUSION................................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ademco Inc. v. TWS Tech. Ltd.*,
2024 WL 3567417 (S.D.N.Y. July 29, 2024) ...............................................................21

*Alfonso v. Maggies Paratransit Corp.*,
203 F. Supp. 3d 244 (E.D.N.Y. 2016) ...........................................................................3

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
690 F.3d 98 (2d Cir. 2012).................................................................................21, 22, 23

*Barron v. Helbiz Inc.*,
2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023)................................................................22

*Bates v. Abbott Labs.*,
2025 WL 65668 (2d Cir. Jan. 10, 2025) ......................................................................12

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)...........................................................................9

*Bezirganyan v. BMW of N. Am., LLC*,
562 F. Supp. 3d 633 (C.D. Cal. 2021) ........................................................................21

*Bibicheff v. PayPal, Inc.*,
844 Fed. App'x 394 (2d Cir. 2021)..............................................................................17

*In re Bibox Grp. Holdings Limited Sec. Litig.*,
534 F. Supp. 3d 326 (S.D.N.Y. 2021)..........................................................................10

*Bynum v. Family Dollar Stores, Inc.*,
592 F. Supp. 3d 304 (S.D.N.Y. 2022).........................................................................24

*In re Canon U.S.A. Data Breach Litig.*,
2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022) .........................................................19

*Cavallaro-Kearins v. Grüns Nutrition Inc.*,
2026 WL 1398422 (S.D.N.Y. May 19, 2026) ........................................................17, 24

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)........................................................................................16

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)...................................................................................14, 16

*Chevron Corp. v. Naranjo*,
  667 F.3d 232 (2d Cir. 2012)................................................................................12

*Contec Corp. v. Remote Solution, Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)..................................................................................5

*Cruz v. Fxdirectdealer*,
  720 F.3d 115 (2d Cir. 2013)................................................................................13

*Dane v. UnitedHealthcare Ins. Co.*,
  974 F.3d 183 (2d Cir. 2020)................................................................................12

*De Leon v. DraftKings, Inc.*,
  2025 WL 3551627 (S.D.N.Y. Dec. 11, 2025) ....................................................17

*DiMuro v. Clinique Labs., LLC*,
  572 Fed. App'x 27 (2d Cir. 2014)........................................................................10

*Doe v. Trump Corp.*,
  6 F.4th 400 (2d Cir. 2021) ....................................................................................7

*Duravest, Inc. v. Viscardi, A.G.*,
  581 F. Supp. 2d 628 (S.D.N.Y. 2008)...................................................................9

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022)..................................................................14

*Edmundson v. Klarna, Inc.*,
  85 F.4th 695 (2d Cir. 2023) ..................................................................................4

*Ellinghaus v. Educational Testing Serv.*,
  2016 WL 8711439 (E.D.N.Y. Sept. 30, 2016) ...................................................15

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018)...............................................................................................6

*ExxonMobil Oil Corp. v. TIG Ins. Co.*,
  44 F.4th 163 (2d Cir. 2022) ..................................................................................3

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l, N.V.*,
  400 F. App'x 611 (2d Cir. 2010) .........................................................................24

*Frio Energy Partners, LLC v. Finance Tech. Leverage, LLC*,
  680 F. Supp. 3d 322 (S.D.N.Y. 2023)..................................................................23

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019)..................................................................22

iii

*Georgia Malone & Co., Inc. v. Rieder*,
19 N.Y.3d 511 (2012) ..................................................................................................24

*Gilbert v. Indeed, Inc.*,
513 F. Supp. 3d 374 (S.D.N.Y. 2021) .............................................................................7

*Glob. Edge Design Inc. v. Michel*,
2021 WL 1549990 (S.D.N.Y. Apr. 20, 2021) ..................................................................9

*Goldman v. Trinity Sch. of Med. Through Bd. of Trustees*,
2025 WL 1099088 (2d Cir. Apr. 14, 2025) ..................................................................8, 9

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314 (2002) ..................................................................................................13

*Hart v. BHH, LLC*,
2016 WL 2642228 (S.D.N.Y. May 5, 2016) ..................................................................11

*Henneberry v. Sumitomo Corp. of Am.*,
415 F. Supp. 2d 423 (S.D.N.Y. 2006) ...........................................................................23

*Huang v. Valarshash LLC*,
2023 WL 6143582 (S.D.N.Y. Sept. 20, 2023) .................................................................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004) ...........................................................................................6

*Katz v. Cellco Partnership*,
794 F.3d 341 (2d Cir. 2015) ...........................................................................................7

*Klausner v. Annie's, Inc.*,
581 F. Supp. 3d 538 (S.D.N.Y. 2022) ................................................................22, 23, 24

*Lewis v. ANSYS, Inc.*,
2021 WL 1199072 (S.D.N.Y. Mar. 30, 2021) .................................................................7

*Liberian Community Ass'n of Connecticut v. Lamont*,
970 F.3d 174 (2d Cir. 2020) .........................................................................................10

*Marks v. Energy Materials Corp.*,
2015 WL 3616973 (S.D.N.Y. June 9, 2015) ..................................................................24

*Meyer v. Uber Tech., Inc.*,
868 F.3d 66 (2d Cir. 2017) .............................................................................................4

*Miramontes v. Ralph Lauren Corp.*,
2023 WL 3293424 (S.D.N.Y. May 5, 2023) ..................................................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................. 3

*In re Nurture Baby Food Litig.*,
    2025 WL 918927 (S.D.N.Y. Mar. 26, 2025) ....................................................... 19

*Olson v. Major League Baseball*,
    29 F.4th 59 (2d Cir. 2022) .................................................................................. 25

*Patellos v. Hello Prods., LLC*,
    523 F. Supp. 3d 523 (S.D.N.Y. 2021) ................................................................. 22

*Pilon v. Discovery Communications, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025) ................................................................... 5

*Pittman v. Chick-fil-A, Inc.*,
    2022 WL 2967586 (S.D.N.Y. July 27, 2022) ...................................................... 17

*In re Prime Energy Consumer Litig.*,
    803 F. Supp. 3d 242 (S.D.N.Y. 2025) ............................................................ 17, 24

*Quintana v. B. Braun Med., Inc.*,
    2018 WL 3559091 (S.D.N.Y. July 24, 2018) ...................................................... 17

*Quintanilla v. WW Int'l, Inc.*,
    541 F. Supp. 3d 331 (S.D.N.Y. 2021) ............................................................ 18, 21

*Raad v. Bank Audi S.A.L.*,
    2025 WL 1214139 (2d Cir. Apr. 28, 2025) ........................................................... 8

*Ragone v. Atlantic Video at Manhattan Center*,
    595 F.3d 115 (2d Cir. 2010) .................................................................................. 6

*Reiner v. Paneth*,
    808 F. Supp. 3d 431 (E.D.N.Y. 2025) ................................................................... 7

*Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago
    v. Bank of New York Mellon*,
    775 F.3d 154 (2d Cir. 2014) ................................................................................ 10

*Rider v. Uphold HQ Inc.*,
    657 F. Supp. 3d 491 (S.D.N.Y. 2023) ................................................................. 23

*Rosenblatt v. Coutts & Co. AG*,
    750 F. App'x 7 (2d Cir. 2018) ............................................................................... 8

*Royalty Network Inc. v. Dishant.com, LLC*,
    638 F. Supp. 2d 410 (S.D.N.Y. 2009) ................................................................... 9

v

*Sarkisian v. OpenLocker Holdings, Inc.*,
   700 F. Supp. 3d 105 (S.D.N.Y. 2023)...................................................................10

*Schatzmann v. Harris Partners Ltd.*,
   2024 WL 1255296 (S.D.N.Y. Mar. 22, 2024) ......................................................6, 7

*Schuman v. Visa U.S.A., Inc.*,
   788 F. Supp. 3d 563 (S.D.N.Y. 2025)...................................................................14

*Shah v. Netflix, Inc.*,
   2025 WL 2793703 (S.D.N.Y. Sept. 30, 2025).......................................................12

*Shiplane Transp. Inc. v. Hwy 31 Exch. Inc.*,
   2024 WL 3862136 (S.D.N.Y. Aug. 19, 2024).......................................................7, 8

*Style Stitch, Inc. v. Avyan Grp. LLC*,
   2025 WL 2710105 (S.D.N.Y. Sept. 23, 2025)..........................................................8

*Sunga v. Naver Corp.*,
   2026 WL 1102870 (N.D. Cal. Apr. 23, 2026) .......................................................20

*Terpin v. AT&T Mobility, LLC*,
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) ................................................................19

*Toretto v. Donnelley Fin. Solutions, Inc.*,
   583 F. Supp. 3d 570 (S.D.N.Y. 2022)...............................................................18, 19

*In re Visa Debit Card Antitrust Litig.*,
   2025 WL 3019893 (S.D.N.Y. Oct. 28, 2025).........................................................19

*Vitt v. Apple Computer, Inc.*,
   469 Fed. App'x 605 (9th Cir. 2012) ......................................................................20

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015) ...........................................................20, 21

*Warth v. Seldin*,
   422 U.S. 490 (1975)..............................................................................................10

*Wilson v. Dantas*,
   746 F.3d 530 (2d Cir. 2014)..................................................................................12

*Wright v. Publishers Clearing House, Inc.*,
   439 F. Supp. 3d 102 (E.D.N.Y. 2020) ..................................................................13

*Yodice v. Touro College and University Sys.*,
   767 F. Supp. 3d 86 (S.D.N.Y. 2025).....................................................................15

*Yuille v. Uphold HQ Inc.*,
    686 F. Supp. 3d 323 (S.D.N.Y. 2023)..................................................................14, 15

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (2d Cir. 2022) ...........................................................................................4

**STATUTES & RULES**

California False Advertising Law.......................................................................... passim

California Unfair Competition Law......................................................................... *passim*

CPLR 302(a)(1) .......................................................................................1, 2, 8, 9

Fed. R. Civ. P. 12(b)(1).................................................................................................1

Fed. R. Civ. P. 12(b)(2).................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................................1

Federal Arbitration Act ..............................................................................................3, 7

New York General Business Law § 349............................................................... *passim*

New York General Business Law § 350............................................................... *passim*

**OTHER AUTHORITIES**

Am. Arb. Ass'n, Consumer Arbitration Rules and Mediation Procedures R-7(a),
    at 11 (May 2, 2025),
    https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf..........................5

Ben Pasternak (@Pasternak), *When I launched the original Pasternak coin on
    Clout*, X (formerly twitter), (Oct. 15, 2025, 11:57pm),
    https://x.com/pasternak/status/1978611203409846662?s=20 .................................................16

Defendants Ben Pasternak ("Pasternak") and B24, Inc. ("B24") (collectively, "Moving Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration, or in the alternative, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6), to dismiss the March 23, 2026 Complaint of Plaintiffs Joshua Lee ("Lee") and Pierre Montmeas ("Montmeas") (collectively, "Plaintiffs") (Dkt. No. 1, the "Complaint" or the "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs are disgruntled users who attempt to equate justifiable changes in corporate strategy with consumer fraud. Plaintiffs allegedly purchased a token called $LAUNCHCOIN, the price of which fell throughout the second half of 2025 against the backdrop of a volatile token market. Now, Plaintiffs blame Moving Defendants for the price decrease. They claim that they were injured by statements made in or around October 2025 in connection with the migration of $LAUNCHCOIN tokens to a new token called $BELIEVE, even though Plaintiffs were already tokenholders and none of the statements are actionable misrepresentations. No legal theory permits Plaintiffs to recover from Moving Defendants.

First, this dispute does not belong in this Court. Plaintiffs agreed to the arbitration agreement in the Believe Terms of Service (the "Terms of Service") as many as three times, including during the token migration process. As explained in greater detail in the accompanying Declaration of Ben Pasternak (the "Pasternak Declaration" or the "Pasternak Decl."), which can be considered on a motion to compel arbitration, Plaintiffs' agreement to the arbitration agreement constitutes a valid clickwrap or sign-in wrap.

Second, if the case is not compelled to arbitration, the Court lacks personal jurisdiction over B24. The Complaint asserts that the Court has specific jurisdiction over B24 under CPLR 302(a)(1), but the Complaint fails to specify the business that B24 has transacted in New York and

1

how such transaction of business gives rise to Plaintiffs' claims. Dissemination of a website or app available to New York consumers does not satisfy CPLR 302(a)(1).

Third, even though Plaintiffs purchased $LAUNCHCOIN tokens, they seek to represent purchasers of $LAUNCHCOIN, $BELIEVE (the token to which $LAUNCHCOIN holders migrated), and a precursor token called $PASTERNAK, which had already significantly decreased in value before $LAUNCHCOIN came into existence. Plaintiffs lack standing to represent $BELIEVE and $PASTERNAK tokenholders.

Fourth, Plaintiffs fail to state a claim. Plaintiffs seek to bring claims under New York's General Business Law ("GBL") §§ 349-50 and California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), but Plaintiffs fail to meet the territorial requirements of either state's statutes. Moreover, Plaintiffs do not allege an actionable misrepresentation. All of the alleged statements are either puffery or are statements that were literally true when made, but were eclipsed by subsequent events. And Plaintiffs do not allege that they saw any particular statement before purchasing $LAUNCHCOIN; indeed, most of the alleged misstatements were made after Plaintiffs purchased $LAUNCHCOIN and made in connection with the token migration to $BELIEVE. Plaintiffs' negligent misrepresentation claim fails because public statements broadcast to anonymous purchasers over the internet create no special privity-like relationship. Finally, the unjust enrichment claim is duplicative of the statutory and tort claims and rests on a relationship far too attenuated to support recovery.

## ARGUMENT

## I.      THE COURT SHOULD COMPEL ARBITRATION

Plaintiffs affirmatively agreed to the arbitration clause in the Terms of Service. To resolve a motion to compel arbitration, courts in the Second Circuit assess "(1) whether the parties agreed

to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022) (citations omitted).

On motions to compel arbitration under the Federal Arbitration Act, courts apply "a standard similar to that applicable for a motion for summary judgment" and thus may "consider materials outside the complaint, including the arbitration agreement itself." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (citations omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, a court may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id*. (citations omitted). "The party seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Id.* (citations omitted). Additionally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### A.     Plaintiffs Agreed to Arbitrate

The Complaint provides scant information regarding the circumstances under which Plaintiffs acquired $LAUNCHCOIN, except to allege that Plaintiffs each "purchased $LAUNCHCOIN tokens and suffered losses of several thousand dollars" and both Plaintiffs were "exposed" to representations regarding $BELIEVE and "purchased or held tokens in reliance on those representations." Compl. ¶¶ 14-15. Plaintiffs do not allege that they sold their $LAUNCHCOIN tokens or refused to migrate their tokens. To the contrary, Plaintiffs allege that "existing $LAUNCHCOIN tokenholders were required to convert their tokens to $BELIEVE on a one-to-one basis through the Believe website…" *Id.* ¶ 92. Under these allegations, the strong inference is that Plaintiffs migrated their tokens to $BELIEVE.

3

During migration, users must assent to the Terms of Service.  As explained in greater detail in the Pasternak Declaration, users agreed to the Terms of Service as many as three times throughout the migration process.[1]  Pasternak Decl. ¶¶ 5-10.  When users connect their wallet to the Believe platform (the platform on which the relevant tokens were launched), they must click a button stating "Connect Wallet," and are told that "By signing in or connecting a wallet, you agree to the Believe Terms of Service and Privacy Policy," with both "Terms of Service" and "Privacy Policy" appearing in different color text.  *Id.* ¶ 8.  The Believe platform further tells users:  "By continuing, you agree to our Terms of Use and have read and agreed to our Privacy Policy," with both "Terms of Use" and "Privacy Policy" appearing in different color text.  *Id.* ¶ 10.[2]  These screens are valid clickwrap agreements, or, at the very least, valid "sign-in wraps," which "advise[s] the user that he or she is agreeing to the terms of service when registering or signing up."  *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).  *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 103 (2d Cir. 2022) (upholding arbitration based on clickwrap agreements); *Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) (compelling arbitration based on sign-in wrap agreement).

### B.  The Arbitration Agreement Encompasses Plaintiffs' Claims

The Pasternak Declaration explains that users who migrated their tokens either agreed to Version 2 or Version 3 of the Terms of Service.  Both versions contain a mandatory, binding arbitration clause that encompasses Plaintiffs' claims.  Version 2 states that <u>all</u> disputes between

---

[1]    Plaintiffs themselves concede an arbitration clause exists; the Complaint references the Terms of Service, which "require[s] Cayman Islands arbitration."  Compl. ¶ 139.

[2]    Additionally, the platform was designed so that when users upgrade tokens, a screen pops up stating "By clicking OK, you confirm acceptance of Believe's Terms of Service and Privacy Policy."  Pasternak Decl. ¶ 9.  Based on the information currently available to Mr. Pasternak, he is not 100% certain that this particular box ended up in the final version available to users.  *Id.*

4

B24 and any user "shall be resolved solely by binding arbitration on an individual basis under the AAA Consumer Arbitration Rules."  Pasternak Decl. Ex. A.[3]

Version 3 states that users must submit any dispute "ARISING OUT OF THESE TERMS OF USE OR THE INTERFACE," including disputes that "AROSE BEFORE THE EFFECTIVE DATES OF THESE TERMS," to "BINDING INDIVIDUAL ARBITRATION," administered by the Cayman Islands Mediation & Arbitration Centre.  Pasternak Decl. Ex. B.  "Interface" is defined in Version 3 of the Terms of Service as "the website-hosted user interface currently available at believe.app and the mobile application user interface accessible via the Apple App Store at https://apps.apple.com/us/app/believe/id6737437664."    Plaintiffs' claims are based on the "Interface."

Because both Version 2 and Version 3 require arbitration, it is not necessary for the Court to decide which version applies, particularly where "the Court is confident that any other choice will make no difference in the ultimate outcome of the case."  *Pilon v. Discovery Communications, LLC*, 769 F. Supp. 3d 273, 287 n.2 (S.D.N.Y. 2025) (compelling arbitration without determining which version applies).

---

[3]    Further, Version 2 of the Terms of Service requires arbitration pursuant to the AAA Consumer Rules, and further provides that the "rules of the ADR Provider shall govern all aspects of the arbitration."  The AAA Consumer Rules, in turn, state that the "arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."  Am. Arb. Ass'n, *Consumer Arbitration Rules and Mediation Procedures R-7(a)*, at 11 (May 2, 2025), https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf.  The Second Circuit has held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005).

### C.    Both Pasternak and B24 Can Compel Arbitration

Regardless of which version of the Terms of Service applies, both Pasternak and B24 can compel arbitration.  B24 is the Version 2 counterparty, so B24 can enforce the clause directly.  The Version 2 arbitration clause is not limited to B24; by its terms, it applies to any of B24's "subsidiaries, affiliates, agents, and employees, predecessors in interest, successors, and assigns."  Because the Complaint alleges that Pasternak is CEO of B24, Compl. ¶ 16, Pasternak is encompassed by the scope of the Version 2 arbitration clause.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (courts must "enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes") (emphasis in original).

If Version 3 applies, the arbitration clause still extends to Pasternak and B24 under principles of equitable estoppel.  A non-signatory may compel arbitration if the "dispute the non-signatory seeks to compel is 'intertwined' with the agreement to arbitrate" and there is a "relationship among the parties that justifies permitting a non-signatory to stand in for a signatory and compel arbitration under the agreement."  *Schatzmann v. Harris Partners Ltd.*, 2024 WL 1255296, at *7 (S.D.N.Y. Mar. 22, 2024) (citation modified).  Both elements are satisfied.

The claims are intertwined.  All six causes of action are asserted against all three Defendants and turn on the same operative facts:  the marketing, mechanics, and migration of the tokens.  Where the "subject matter of the dispute" between the plaintiff and the counterparty to the agreement "is factually intertwined with the dispute between" the plaintiff and a nonsignatory, then the plaintiff "is properly estopped from avoiding arbitration" with the nonsignatory.  *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 128 (2d Cir. 2010).  *Accord JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004).

6

The parties' relationship also supports estoppel.  The Second Circuit requires a "close relationship among the signatories and non-signatories such that it can reasonably be inferred that the signatories had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories." *Doe v. Trump Corp.*, 6 F.4th 400, 414 (2d Cir. 2021).  That relationship exists when the non-signatory "has some sort of corporate relationship to a signatory party … subsidiaries, affiliates, agents, and other related business entities," or "owns or controls a signatory," or where the signatory treated the two as interchangeable.  *Id.* at 413.  Here, Plaintiffs allege that Pasternak is CEO of B24 and Believe Foundation, Compl. ¶ 16, and that the three Defendants "operated as coordinated entities managing the token ecosystem," Compl. ¶ 55.  That type of relationship supports estoppel.  *See Schatzmann*, 2024 WL 1255296, at *7-8 (non-signatory "chairman and/or CEO" who controlled signatory entities could invoke arbitration clause); *Reiner v. Paneth*, 808 F. Supp. 3d 431, 452 (E.D.N.Y. 2025) (applying equitable estoppel because "There is no claim against Mendel that does not relate to Plaintiffs' dispute with David").[4]

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER B24[5]

"In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction."  *Shiplane Transp. Inc. v. Hwy 31 Exch. Inc.*, 2024 WL 3862136, at *3 (S.D.N.Y. Aug. 19, 2024) (citation omitted).  Because this is a diversity action, Compl. ¶ 21, "personal jurisdiction is governed by the law of the forum state – here, New York – and the

---

[4]    If a motion to compel arbitration is granted, the Federal Arbitration Act "mandate[s] a stay of proceedings."  *Katz v. Cellco Partnership*, 794 F.3d 341, 347 (2d Cir. 2015).

[5]    The Court may opt to analyze the portion of the Motion seeking to dismiss for lack of personal jurisdiction before the portion of the Motion seeking to compel arbitration, or vice versa. *Compare Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 411 (S.D.N.Y. 2021) (analyzing one defendant's motion to dismiss for lack of personal jurisdiction before same defendant's motion to compel arbitration) *with Lewis v. ANSYS, Inc.*, 2021 WL 1199072, at *3 (S.D.N.Y. Mar. 30, 2021) ("Courts in this district will resolve a motion to compel arbitration prior to resolving a motion to dismiss for lack of personal jurisdiction").

requirements of due process." *Goldman v. Trinity Sch. of Med. Through Bd. of Trustees*, 2025 WL 1099088, at *1 (2d Cir. Apr. 14, 2025) (citation omitted).

The Court thus must engage in a two-part analysis to determine whether there is personal jurisdiction over a non-resident. *Shiplane*, 2024 WL 3862136, at *3. First, the exercise of jurisdiction must be permitted by New York's long-arm statute. Second, the Court must determine whether such exercise comports with due process. *Id.*

Plaintiffs fail to meet their burden. The Complaint asserts that B24 is subject to specific jurisdiction under CPLR 302(a)(1) only. Compl. ¶ 26. "Specific personal jurisdiction subjects a defendant to suit only on claims that arise from the defendant's conduct in the forum." *Huang v. Valarshash LLC*, 2023 WL 6143582, at *3 (S.D.N.Y. Sept. 20, 2023) (citation omitted). The Second Circuit has explained that "[t]o establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Raad v. Bank Audi S.A.L.*, 2025 WL 1214139, at *1 (2d Cir. Apr. 28, 2025). "For purposes of the New York long-arm statute, transacting business means purposeful activity-some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Style Stitch, Inc. v. Avyan Grp. LLC*, 2025 WL 2710105, at *4 (S.D.N.Y. Sept. 23, 2025) (citations omitted). The "'overriding criterion' in determining whether an entity 'transacts any business' in New York within the meaning of the statute is whether the entity purposefully avails itself of the privilege of conducting activities within New York." *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 9-10 (2d Cir. 2018) (citation modified).

The Complaint claims that B24 "transacts business throughout the United States, including by operating the Believe/Clout website and distributing the Believe/Clout mobile application

8

through U.S. app stores.  B24 transacts business in New York through its operation of the Believe platform."  Compl. ¶ 26.  But operating a nationally accessible website or app does not constitute the transaction of business in New York.  "Because websites are generally speaking, equally accessible everywhere, the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)."  *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (quotation marks and citations omitted).  And as the Second Circuit has cautioned, "general marketing efforts, including its website and email campaigns," are not sufficient to confer specific jurisdiction under CPLR 302(a)(1) if not "specifically targeted at New York residents."  *Goldman*, 2025 WL 1099088, at *2.

The Complaint also alleges that B24 is subject to jurisdiction under CPLR 302(a)(1) because "Pasternak, B24's founder and controlling principal, operates B24 from New York."  Compl. ¶ 26.  But jurisdiction is analyzed defendant-by-defendant.  *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021) ("A plaintiff must carry his burden with respect to each defendant individually.") (citation omitted).  Jurisdiction over a "controlling principal" does not *ipso facto* extend jurisdiction to the corporation.  *See Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 639 (S.D.N.Y. 2008) ("the fact that a corporation's officer is doing business in his personal capacity in New York does not subject the corporation itself to jurisdiction") (citation modified).

Likewise, for the same reasons that Plaintiffs have not met CPLR 302(a)(1), they cannot satisfy due process.  *See Glob. Edge Design Inc. v. Michel*, 2021 WL 1549990, at *4 (S.D.N.Y. Apr. 20, 2021) (publishing content on a "website that is accessible nationwide" does not equate to "purposeful availment"); *Sarkisian v. OpenLocker Holdings, Inc.*, 700 F. Supp. 3d 105, 110

9

(S.D.N.Y. 2023) (New York place of business does not "establish any connection whatsoever between New York and the claims underlying this litigation").

## III.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS REGARDING $PASTERNAK OR $BELIEVE TOKENS

"[P]laintiffs bear the burden of alleging facts that affirmatively and plausibly suggest that they have standing to sue." *Liberian Community Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (citation modified).  The "proper procedural route for bringing a standing challenge is a motion under Rule 12(b)(1)."  *Id.* (citation modified).

Plaintiffs who are representatives of a putative class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added).  The Second Circuit has explained that "a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (citation omitted).

Applying these principles, courts will dismiss claims at the pleading stage when named class plaintiffs seek to represent purchasers of products that the plaintiffs themselves never purchased. *See DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x 27, 29 (2d Cir. 2014) (affirming dismissal of consumer fraud claims regarding products plaintiffs did not purchase, where the defendant "made different advertising claims for each product" and "[e]ntirely unique evidence will, therefore, be required"). *See also In re Bibox Grp. Holdings Limited Sec. Litig.*, 534 F. Supp. 3d 326, 335 (S.D.N.Y. 2021) (granting motion to dismiss for lack of standing because "plaintiff

10

has not alleged that he suffered any actual injury from the conduct of the defendants regarding the five tokens he did not purchase"); *Hart v. BHH, LLC*, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) (plaintiffs do not have "free reign to bring lawsuits regarding products they never purchased").

Here, the two Plaintiffs seek to represent all users who purchased $PASTERNAK, $LAUNCHCOIN, and $BELIEVE tokens. Compl. ¶ 121. Yet, Plaintiffs only allegedly purchased $LAUNCHCOIN tokens. *Id.* ¶¶ 14-15. $PASTERNAK was the precursor token to $LAUNCHCOIN, and went through a cycle during which it rapidly appreciated and depreciated in value, prior to the rebrand to $LAUNCHCOIN. *Id.* ¶¶ 39-41. The alleged misrepresentations concerning $LAUNCHCOIN were completely distinct from $PASTERNAK and occurred after $PASTERNAK holders allegedly suffered damages, and thus the "conduct" concerning $PASTERNAK does not implicate the "same set of concerns" as the alleged misrepresentations regarding $LAUNCHCOIN.

Similarly, any purchasers of $BELIEVE tokens, by necessity, would have purchased after the October 2025 migration, *id.* ¶ 49, which in turn occurred after another cycle in which "the $LAUNCHCOIN token's price declined from its all-time high toward zero." *Id.* ¶ 46. In other words, the Complaint alleges that $PASTERNAK tokenholders allegedly suffered losses before the rebrand to $LAUNCHCOIN, and $LAUNCHCOIN tokenholders allegedly suffered losses before the migration to $BELIEVE. Plaintiffs thus lack standing to represent $PASTERNAK and $BELIEVE holders.

11

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MOVING DEFENDANTS

Even if Plaintiffs are permitted to litigate in this Court, the Complaint fails to state a claim against Moving Defendants.[6]  "To survive a rule 12(b)(6) motion to dismiss, the complaint must include enough facts to state a claim to relief that is plausible on its face." *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (citation and quotation marks omitted).  "Although all allegations contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions." *Id.* (citation and quotation marks omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (citation omitted).

### A.    The Complaint Fails to State a Claim Under New York GBL §§ 349 and 350

GBL § 349 makes it unlawful to engage in any "deceptive act[] or practice[] in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  Courts often analyze both claims together, requiring the plaintiff to "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Bates v. Abbott Labs.*, 2025 WL 65668, at *1 (2d Cir. Jan. 10, 2025) (citation and quotation marks omitted).

---

[6]    The Second Circuit permits district courts to address a 12(b)(6) motion <u>before</u> addressing a 12(b)(2) motion for lack of personal jurisdiction where there are multiple defendants and where "all defendants collectively challenge the legal sufficiency of the plaintiff's causes of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012). *See also Shah v. Netflix, Inc.*, 2025 WL 2793703, at *7 (S.D.N.Y. Sept. 30, 2025) (applying *Chevron* and deciding 12(b)(6) motion "regardless of whether it has personal jurisdiction over" one particular defendant).

12

      *1.     Plaintiffs Cannot Invoke GBL §§ 349 and 350 Because They Did Not Enter Into Transactions in New York*

Neither Plaintiff is a New York resident and there are no factual allegations that their specific transactions had a connection to New York sufficient to state a claim under the GBL.

In *Cruz v. Fxdirectdealer*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit held that GBL § 349 can be invoked by an out-of-state plaintiff only in limited circumstances, depending on "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." *Id.* at 122 (citations and quotations omitted). There must be a "sufficient nexus between [plaintiff's] transactions … and New York." *Id.* This test was built upon the standard set forth by the New York Court of Appeals in *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002) which cautioned against "an unwarranted expansive reading of the statute" which could lead "to the nationwide, if not global application of General Business Law § 349." The Court of Appeals further explained that "hatching a scheme" or "originating a marketing campaign" in New York does not implicate the statute. *Id.* at 324. Courts, applying *Cruz* and *Goshen*, routinely dismiss GBL § 349 claims where the location of the transaction is not in New York. *See Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *5 (S.D.N.Y. May 5, 2023) (dismissing GBL § 349 claim even though defendant was located in New York, because plaintiff was a "Texan who saw the label and purchased the sweater in Texas"); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110-12 (E.D.N.Y. 2020) (dismissing GBL § 349 claim even though plaintiffs received advertisements from a seller in New York, transaction was processed in New York, and agreement contained New York choice of law provision).

13

Here, neither Plaintiff is a resident of New York.  Compl. ¶¶ 14-15.  Although Plaintiffs allege in conclusory fashion that the "deceptive conduct occurred in New York," *id.* ¶ 133, the Complaint contains no <u>facts</u> that Plaintiffs' specific transactions took place in New York.

  2.  <u>*The Alleged Statements Are Not Actionable Under GBL §§ 349 and 350*</u>

The Complaint separately fails to meet the elements of either claim because under both GBL §§ 349 and 350, "it is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (citation modified).

<u>First</u>, the Complaint alleges statements that are mere puffery, "defined as exaggerated general statements that make no specific claims on which consumers could rely because they are subjective claims about products, which cannot be proven either true or false," and are "not actionable."  *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 344 (S.D.N.Y. 2023) (citation modified).  "Puffery may occur in the form of a general claim of superiority over comparable products, or alternatively, as an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying."  *Id.* at 345 ("Uphold's statements that 'security is in our DNA' and that 'security is built into our systems and culture' are prototypical examples of puffery'") (citation modified).[7]

The Complaint alleges statements "urging consumers to hold through the decline," such as "Short term price action is irrelevant.  Trust the process," "Traders hold coins for 48H.  True believers hold coins for months and years," "Patience is bitter but its fruit is sweet," "Stop Trading. Believe in something," and users could "potentially win when they win."  Compl. ¶¶ 5, 83.  These

---

[7] *See also Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 577 n.8 (S.D.N.Y. 2025) (statements that Visa's brand is "one of the most trusted brands in the world" and "protects consumers" are unactionable puffery); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153 (S.D.N.Y. 2022) (statement that "Our Sheep Live The Good Life" was "classic puffery").

slogans are prototypical puffery because they are "exaggerated, blustering, and boasting statement[s]." *Yuille*, 686 F. Supp. 3d at 345.

Second, the Complaint alleges statements that were not "false and misleading when they were made." *Yuille*, 686 F. Supp. 3d at 344 (emphasis added). "Statements that were not 'misleading' at the time they were made but were proven false by subsequent events are not actionable under § 349." *Ellinghaus v. Educational Testing Serv.*, 2016 WL 8711439, at *8 (E.D.N.Y. Sept. 30, 2016). *See also Yodice v. Touro College and University Sys.*, 767 F. Supp. 3d 86, 95 (S.D.N.Y. 2025) (statements that college offered an on-campus experience were not materially misleading under the GBL; "[t]he fact that an unanticipated pandemic forced it to change course does not retroactively render their advertisements deceptive").

The Complaint alleges that "Defendants marketed the flywheel buyback as the primary value-accrual mechanism for token holders." Compl. ¶ 138.c. Defendants allegedly "made at least twelve separate public promises about a 'flywheel' buyback mechanism under which platform fee revenue would be used to purchase tokens on the open market." *Id.* ¶ 46. There are no factual allegations that this statement was false when made; rather, the Complaint alleges that the flywheel launched but was merely "delayed more than five months." *Id.* ¶ 110. Plaintiffs' failure to allege contemporaneous falsity is fatal to the GBL claims.

Similarly, the Complaint alleges statements about token ownership that were, by the terms of the Complaint itself, literally true. Specifically, Pasternak allegedly stated publicly on January 24, 2025 that "he had '0 ownership in the token,'" *id.* ¶¶ 39, 70, and on October 15, 2025 made statements "specifying that investor lockup timers would start from the date of their investment, that the earliest investor unlock will occur a year from today, and that the earliest contributor

15

unlocks start a year from today." *Id.* ¶ 75. The Complaint admits that these statements were "technically accurate," *id.* ¶ 78, and thus are not actionable.

The Complaint also alleges that on October 15, 2025, "Pasternak stated that 'no individual or entity is getting coins for the next year at a minimum,'" when "the migration simultaneously allocated 3% of the new token supply" to the Foundation, "immediately unlocked with no vesting restriction." Compl. ¶ 71. But that fact <u>was</u> disclosed <u>on the very same day</u>. An October 15, 2025 post on X, which can be considered by this Court,[8] states that "The Foundation allocation <u>is unlocked</u>" (emphasis added). *See* Ben Pasternak (@Pasternak), *When I launched the original Pasternak coin on Clout*, X (formerly twitter), (Oct. 15, 2025, 11:57pm), https://x.com/pasternak/status/1978611203409846662?s=20. Consumers could not have been misled.

The Complaint further alleges that the token migration from $LAUNCHCOIN to $BELIEVE increased total token supply by 33.3%, but the "team publicly described this supply change as a '25% increase' in its official communications." Compl. ¶ 93. Indeed, even the Complaint admits that this was a "math error." *Id.* Further, as the math error was widely known, *see id.* ¶ 103 (the error was "widely mocked on X,") and anyone could have reviewed the disclosed numbers and done basic arithmetic, *id.* ¶ 93; the math error thus could not have been a misrepresentation. *See Chen*, 954 F.3d at 501 ("there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed") (citation modified).

---

[8]    This X post can be considered because it is "integral" to the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). *See* Compl. ¶ 70 (describing exact same X post in which Pasternak stated that "he had never even purchased a Solana coin before").

3. *The Complaint Fails to Sufficiently Allege Any Relationship Between the Allegedly Deceptive Statements and the Injury*

Although GBL §§ 349-50 do not require reliance, a plaintiff still must establish that he sustained injury as a result of the allegedly deceptive conduct. *See Pittman v. Chick-fil-A, Inc.*, 2022 WL 2967586, at *5 (S.D.N.Y. July 27, 2022). Courts therefore will dismiss GBL claims that fail to plead that the plaintiff saw the allegedly deceptive statements or that the injury has any relationship to the statements. *See Quintana v. B. Braun Med., Inc.*, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (dismissing GBL claim where "[t]hese allegations do not suggest Plaintiff ever saw these statements and under what circumstances"); *De Leon v. DraftKings, Inc.*, 2025 WL 3551627, at *5 (S.D.N.Y. Dec. 11, 2025) (dismissing GBL claims where "[t]he FAC does not identify the advertisement seen or heard by any of the named plaintiffs and on which it asserts they relied").

Plaintiffs allege only in conclusory fashion that they were "<u>exposed</u> to Defendants' public representations regarding the $BELIEVE token," Compl. ¶¶ 14-15 (emphasis added), but do not allege <u>what particular</u> statement they saw, and when and where they saw those statements. Further, Plaintiffs claim that they were exposed to $BELIEVE representations but allege they purchased the precursor token $LAUNCHCOIN; the statements they supposedly saw are not related to the token they purchased. *See Bibicheff v. PayPal, Inc.*, 844 Fed. App'x 394, 396 (2d Cir. 2021) (dismissing GBL claim because plaintiff "does not allege that she saw PayPal's alleged misrepresentations until after the fraudulent activity and resulting harm had occurred").

**B.      The Complaint Fails to State a Claim Under California's UCL or FAL**

Because the Complaint fails to state a claim under the GBL, the UCL and FAL claims must fail as well. *See In re Prime Energy Consumer Litig.*, 803 F. Supp. 3d 242, 256 (S.D.N.Y. 2025) (California consumer protection claims – "rise and fall with the GBL claims"); *Cavallaro-Kearins*

17

*v. Grüns Nutrition Inc.*, 2026 WL 1398422, at \*13 (S.D.N.Y. May 19, 2026) ("Courts interpret the California consumer fraud statute 'interchangeably' with GBL 349 and 350"). But the UCL and FAL claims fail for multiple additional, independent reasons.

The "UCL prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. The UCL borrows violations from other laws by making them independently actionable as unfair competitive practices." *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 344 (S.D.N.Y. 2021) (citation modified). The FAL "prohibits any unfair, deceptive, untrue, or misleading advertising." *Id.* (citation modified). "Courts often analyze these statutes together because they share similar attributes." *Id.* (citation modified). One such requirement is that Plaintiffs must "meet the pleading standards of Federal Rule of Civil Procedure 9(b)." *Id.* Another requirement is that both statutes "are governed by the reasonable consumer test. … Under that standard, a plaintiff must show that members of the public are likely to be deceived by any alleged misrepresentations." *Id.* at 345 (citation modified).

### 1.    *Extraterritoriality Bars the UCL and FAL Claims*

As an initial gateway issue, the UCL and FAL claims should be dismissed because they do not apply extraterritorially. The "relevant inquiry for whether" a California law "is being applied extraterritorially is whether the conduct *which gives rise to liability* occurs in California." *Toretto v. Donnelley Fin. Solutions, Inc.*, 583 F. Supp. 3d 570, 604 (S.D.N.Y. 2022) (citation modified, emphasis in original). In *Toretto*, Judge Woods analyzed California law and rejected the notion adopted by some California district courts that any California resident could bring a UCL claim "regardless of where the alleged misconduct occurred." *Id.* (citation modified). Instead, the court found that if "the conduct allegedly creating liability in this case occurred wholly outside of California" – in *Toretto*, the conduct was inadequate security measures that did not protect the plaintiff's personal information against a data breach – then "the Court does not find a compelling

18

reason to conclude that [plaintiff] can bring a claim under the UCL merely because he is a California resident who allegedly suffered injury in California." *Id.* at 605. *See also In re Canon U.S.A. Data Breach Litig.*, 2022 WL 22248656, at *12-13 (E.D.N.Y. Mar. 15, 2022) (dismissing UCL claim by California resident because she "did not allege that any conduct occurred in California").

Here, the only nexus with California is that Plaintiff Lee is an "individual and citizen of the State of California, residing in Playa Vista, California." Compl. ¶ 14.[9] Plaintiffs do not allege that any Defendant resided in California, or took any actions from California, or that any of the relevant conduct underlying the claims occurred in California. Under the reasoning articulated in *Toretto* and *Canon*, the UCL and FAL claims should be dismissed.

> 2.     *Plaintiffs Have an Adequate Remedy at Law*

The "UCL and FAL do not create a private right for plaintiffs to seek monetary damages; they only permit equitable relief by way of injunctive relief and restitution." *In re Nurture Baby Food Litig.*, 2025 WL 918927, at *16 (S.D.N.Y. Mar. 26, 2025). "A complaint fails to state a claim under the UCL where it fails to allege that the plaintiff lacks an adequate remedy at law." *In re Visa Debit Card Antitrust Litig.*, 2025 WL 3019893, at *11 (S.D.N.Y. Oct. 28, 2025).

The Complaint does not allege that Plaintiffs lack an adequate remedy at law. To the contrary, the Complaint's Prayer for Relief seeks <u>four different categories of monetary damages</u>. Compl. ¶ 171.c-e, g. Accordingly, the UCL and FAL claims should be dismissed.[10]

---

[9]     Plaintiff Montmeas is an "individual and citizen of France." Compl. ¶ 15. It is unclear if the Complaint asserts the UCL and FAL claims on behalf of Montmeas, but if it is, such claims should be dismissed because Montmeas has no relationship with California whatsoever. *See Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019) (dismissing UCL claim by plaintiff who was not domiciled in California).

[10]     Even if Plaintiffs did lack an adequate remedy at law, they are not entitled to restitution resulting from their UCL and FAL claims because "to show entitlement to restitution, a plaintiff

### 3. *Plaintiffs Fail to Meet the Elements of the UCL and FAL Claims*

In addition to the failure to meet the gateway issues, the UCL and FAL claims should be dismissed because Plaintiffs have not sufficiently alleged either claim.

First, Plaintiffs lack statutory standing to bring either claim because they fail to plead "actual reliance." *Sunga v. Naver Corp.*, 2026 WL 1102870, at \*15 (N.D. Cal. Apr. 23, 2026) (dismissing UCL and FAL claims and explaining that a plaintiff "must show that the representation was an immediate cause of the injury-producing conduct") (citation modified).

Plaintiffs allege that they were "exposed to Defendants' public representations regarding the $BELIEVE token," Compl. ¶¶ 14-15, but purchased the prior, pre-migration token, $LAUNCHCOIN, *id.* As such, the alleged misrepresentations concerning $BELIEVE were not the "immediate cause" of Plaintiffs' purchase of $LAUNCHCOIN. Plaintiffs further do not specify, at a level sufficient to meet Rule 9(b), which of the alleged misrepresentations they were "exposed" to, and what role such statement played in Plaintiffs' purchasing decisions.

Second, for the same reasons the GBL claims should be dismissed, several of the statements are not actionable under the UCL and FAL because they are mere puffery. *See Vitt v. Apple Computer, Inc.*, 469 Fed. App'x 605, 607 (9th Cir. 2012) (affirming dismissal of UCL and FAL claims because "mere puffing cannot support liability under California consumer protection law") (citation modified); *Bezirganyan v. BMW of N. Am., LLC*, 562 F. Supp. 3d 633, 643 (C.D. Cal. 2021) (dismissing UCL and FAL claims as puffery).

Third, as also explained above, Plaintiffs cannot sufficiently allege fraud or deception with regard to statements that were literally true at the time but that allegedly became false later. *See*

---

must demonstrate that the defendant is in possession of money or property taken from him or her." *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1093 (C.D. Cal. 2015) (citation omitted). There are no allegations that Moving Defendants are in possession of any monies paid by Plaintiffs.

*Quintanilla*, 541 F. Supp. 3d at 346 ("no reasonable consumer could have understood such representations to mean that WW promised to keep offering such services even in the face of a deadly pandemic"); *Warner*, 105 F. Supp. 3d at 1092-93 (dismissing UCL and FAL claim and finding that subsequent change to Tinder's pricing structure did not render false Tinder's public representations that Tinder was free).

### C.  The Complaint Fails to State a Claim for Negligent Misrepresentation

To state a claim for negligent misrepresentation,[11] "the plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (citation modified).  A "negligent-misrepresentation claim must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement." *Ademco Inc. v. TWS Tech. Ltd.*, 2024 WL 3567417, at *4 (S.D.N.Y. July 29, 2024).  The negligent misrepresentation claim fails for three principal reasons.

First, "New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Anschutz*, 690 F.3d at 114 (citation modified).  Crucially, "where the statement at issue is directed at a faceless o[r] unresolved class o[f] persons, no duty of care arises." *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 535 (S.D.N.Y. 2021) (quotations omitted).  "And in the

---

[11]  The Complaint does not allege what state's law applies to Plaintiffs' common law claims. Given the fact that Plaintiffs and Defendants collectively reside in different jurisdictions but the case was brought in this district, Moving Defendants utilize New York law on this motion.

commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the existence of such a special relationship capable of giving rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* (citation modified). Applying these principles, courts routinely dismiss negligent misrepresentation claims concerning statements broadly disseminated to consumers. *See Anschutz*, 690 F.3d at 115 ("there are no allegations of any direct contact between Anschutz and the Rating Agencies. We therefore conclude that Anschutz has failed to state a claim for negligent misrepresentation under New York law."); *Barron v. Helbiz Inc.*, 2023 WL 5672640, at *14 (S.D.N.Y. Sept. 1, 2023) (dismissing negligent misrepresentation claim concerning representations about token on company website and social media); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 219 (S.D.N.Y. 2019) (Tweets did not constitute misrepresentations because plaintiffs were not a "known party;" "being one of a class of potential recipients of a statement will not suffice").

Here, the Complaint fails to allege <u>any</u> relationship between Plaintiffs and Defendants – Plaintiffs do not allege that they acquired any tokens from Defendants – let alone the "special relationship" required to plead a negligent misrepresentation claim. *See Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 549 (S.D.N.Y. 2022) (dismissing negligent misrepresentation claim and noting that "the relationship between Plaintiff and Defendant appears to be even more attenuated than a run-of-the-mill, arms-length commercial transaction because" Plaintiff did not purchase the Fruit Snacks directly from Defendant"). To the contrary, Plaintiffs are the type of "faceless" recipient of a mass communication that the Second Circuit in *Anschutz* held did not constitute a special relationship.

22

Second, for the same reasons that Plaintiffs fail to state a claim under the GBL, the UCL, and the FAL, they fail to state a claim for negligent misrepresentation. *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 452 (S.D.N.Y. 2006) ("statements of puffery, or those concerning future expectations, are insulated from liability" for negligent misrepresentation); *Frio Energy Partners, LLC v. Finance Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 347 (S.D.N.Y. 2023) (dismissing negligent misrepresentation claim because "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition") (citation modified).

Third, Plaintiffs fail to sufficiently allege reliance. As explained above, Plaintiffs do not allege which statements they relied upon; instead alleging that they were "exposed" to statements about $BELIEVE after they purchased $LAUNCHCOIN tokens. *See Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 504 (S.D.N.Y. 2023) (dismissing negligent misrepresentation claim because complaint does not "contain any allegations regarding how or when plaintiffs received, reviewed and processed the numerous statements").

### D.     **The Complaint Fails to State a Claim for Unjust Enrichment**

Unjust enrichment requires the plaintiff to show "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Klausner*, 581 F. Supp. 3d at 551. "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim. Nor is it a catchall cause of action to be used where others fail." *Id.* (citation modified). Courts will dismiss unjust enrichment claims that are duplicative of GBL, UCL, FAL, or negligent misrepresentation claims. *See id.*; *Prime Energy*, 803 F. Supp. 3d at 258; *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 317 (S.D.N.Y. 2022); *Cavallaro-Kearins*, 2026 WL 1398422, at *16.

23

Plaintiffs allege that Moving Defendants were enriched at Plaintiffs' expense because "Plaintiffs' and Class members' tokens lost their value." Compl. ¶ 169. That is the same set of facts underlying the other claims.

The claim also fails because "an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l, N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (citation omitted). As explained above, the Complaint plainly seeks monetary damages. *See* Compl. ¶ 171.c-d, g.

The Complaint further fails to sufficiently plead that Moving Defendants were enriched at Plaintiffs' expense. Plaintiffs do not allege that they purchased any tokens from Moving Defendants. And "while a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012). "[T]he relationship is 'too attenuated' if the parties were not connected in a manner that could have caused reliance or inducement, or if they simply had no dealings with each other." *Marks v. Energy Materials Corp.*, 2015 WL 3616973, at *6 (S.D.N.Y. June 9, 2015) (citation modified).

There is a mismatch between Defendants' alleged "enrichment" and Plaintiffs' alleged loss. Plaintiffs allege that Defendants were enriched because "[t]rades executed through Believe-controlled infrastructure generated platform fees routed to B24 … and trades in tokens created by Pasternak or other Defendant-controlled accounts generated creator fees for those accounts." Compl. ¶ 168. "Plaintiffs' and Class members' tokens lost their value while Defendants continued to extract fees from every transaction on the platform." *Id.* ¶ 169. Accordingly, Moving Defendants allegedly attained fees from the Believe platform, and Plaintiffs' loss was due to the decrease in value in the $LAUNCHCOIN token. That is the sort of relationship that is "too attenuated" to support an unjust enrichment claim.

24

Finally, for the same reason that the other causes of action, which rest on the same alleged conduct, fail to state a claim, the Complaint also fails to plead any facts illustrating that Moving Defendants' actions were unjust, or that Moving Defendants acted inequitably. *See Olson v. Major League Baseball*, 29 F.4th 59, 86 (2d Cir. 2022).

## CONCLUSION

For the foregoing reasons, the Court should compel arbitration or, in the alternative, dismiss the Complaint in its entirety.

Dated: New York, New York
      July 22, 2026

MORRISON COHEN LLP

By:       */s/ Michael Mix*
        Jason Gottlieb
        Michael Mix
        909 Third Avenue
        New York, New York 10022
        (212) 735-8600
        jgottlieb@morrisoncohen.com
        mmix@morrisoncohen.com

      *Attorneys for Defendants Ben Pasternak*
      *and B24, Inc.*
