UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------------------------------- x

JOSHUA LEE and PIERRE MONTMEAS, on behalf of
themselves and all others similarly situated,          Case No. 1:26-cv-2368 (DEH) (VF)

                       Plaintiffs,

     -against-

BEN PASTERNAK; B24, INC.; BELIEVE
FOUNDATION; and DOES 1 THROUGH 10,

                      Defendants.

------------------------------------------------------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT

## BELIEVE FOUNDATION'S MOTION TO DISMISS OR COMPEL ARBITRATION

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

POINT I: THE COURT HAS PERSONAL JURISDICTION OVER THE FOUNDATION; AT MINIMUM, PLAINTIFFS ARE ENTITLED TO JURISDICTIONAL DISCOVERY ..................................................................... 3

    A. The Prima Facie Standard, Before Discovery, Is A Light One.................................... 3

    B. Paragraph 29 Pleads The *Kreutter* Configuration ......................................................... 3

    C. Joint Venture And Alter Ego Independently Support Jurisdiction ............................... 4

    D. At Minimum, Jurisdictional Discovery Is Warranted ...................................................... 5

POINT II: THE FOUNDATION'S ALTERNATIVE MOTION TO COMPEL ARBITRATION FAILS FOR THE SAME REASONS, AND ONE MORE .................... 6

POINT III: THE COMPLAINT STATES CLAIMS AGAINST THE FOUNDATION .............. 6

    A. The Complaint Gives The Foundation Exactly The Notice Rule 8 Requires ............... 7

    B. The Derivative-Liability Theories Are Adequately Pled .................................................. 7

    C. The Merits Arguments The Foundation Joins Fail For The Reasons Stated In Opposition No. 1 ...................................................................................................... 10

POINT IV: IN THE ALTERNATIVE, LEAVE TO AMEND AND JURISDICTIONAL DISCOVERY ........................................................................................................... 11

CONCLUSION................................................................................................................... 11

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 55-57 (2d Dep't 2016)..........................................4

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ....................................................7

*Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023) ............................................................................................................................4

*Barron v. Helbiz Inc.*, 2023 WL 5672640 at *18 (S.D.N.Y. Sept. 1, 2023) ................................. 10

*Brown v. Cara*, 420 F.3d 148, 157-59 (2d Cir. 2005)........................................................................8

*Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012) ............................................6, 7

*Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) .....................3

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986)..........................................................4

*Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 632-33, 639 (S.D.N.Y. 2008)...................5

*Edwardo v. Roman Catholic Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023) (per curiam) ...........................................................................................................................4

*Ga. Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516–19 (2012).......................................................10

*Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998)........................................................3

*Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).............8, 9

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ................................................................3

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) ...........................................10

*Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 WL 22832384 at *7 ..........................5

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) .................................10

*New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 217, 225 (2d Cir. 2014) .............................................................................................................................9

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 140 (2d Cir. 1991) .........................................................................................................................9

*Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-30 (2d Cir. 2019)..........................................9

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 298 (1st Dep't 2003) 1, 7, 8, 9

*Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)..............................................................................9

*Shah v. Netflix, Inc.*, 2025 WL 2793703, at *7 (S.D.N.Y. Sept. 30, 2025) ...................................7

*USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 266 (E.D.N.Y. 2014)................................................................................................................5

*Zeising v. Kelly*, 152 F. Supp. 2d 335, 347-48 (S.D.N.Y. 2001) ....................................................9

**Rules**

Rule 8 ...................................................................................................................... 4, 7

Rule 8(d)(2) .................................................................................................................. 4

## PRELIMINARY STATEMENT

The roadmap to denial of the Foundation's motion lies in its own authorities as written, not as invented as with *Richbell*'s elements.

The Foundation describes itself as a Cayman Islands entity that did nothing. The Complaint describes the entity that received everything. The Foundation is the counterparty to the platform's Terms of Use. Compl. ¶ 18. It holds the copyright to the Believe application. *Id.* It controls the token treasury and the "flywheel" buyback wallet, which Defendants promised at least twelve times would support the token's price. *Id.* ¶¶ 18, 46.

The Foundation's New York footprint is pleaded. The flywheel wallet activity and treasury management carried out in New York was "directed by the Foundation." *Id.* ¶ 29. And when the forced October 2025 migration expanded the token supply by a third, one tranche came immediately unlocked: roughly forty million tokens, to the Foundation. *Id.* ¶¶ 71, 76-77, 94. That happened the same day Pasternak told the public "no individual or entity is getting coins for the next year at minimum." *Id.* ¶ 71.

The Foundation's own declaration completes the picture. It has no officers, no employees, no members, and no shareholders. Kennedy Decl. (Dkt. 29) ¶¶ 2-5. A corporate-services firm supervises the single director (necessarily on behalf of an undisclosed party). *See id.* ¶ 4.

This entity, whose only business seems to be holding a Manhattan enterprise's treasury and its one unlocked allocation, is not a stranger to New York. It is the offshore pocket of a New York operation. At minimum, Plaintiffs are entitled to jurisdictional discovery. The motion should be denied.

<u>**STATEMENT OF FACTS**</u>

The Court is respectfully referred to Plaintiffs' opposition to the B24/Pasternak motion ("Pl. Opp. No. 1") for the full factual statement. The facts specific to this motion follow.

The Foundation contracts, holds, directs, and collects. It is the contracting party under the platform's published Terms of Use. Compl. ¶ 18. It holds the copyright to the Believe iOS application. *Id.* It "controls the $BELIEVE token treasury and flywheel buyback wallet." *Id.* The New York treasury and wallet activity was "directed by the Foundation." *Id.* ¶ 29. Pasternak is alleged to serve as chief executive of the platform and the entity defendants. *Id.* ¶ 16. The three defendants "operated as coordinated entities managing the token ecosystem, constituting a joint venture." *Id.* ¶ 55.

The October 2025 migration was designed and executed from New York, on B24's New York-operated platform. *Id.* ¶¶ 52, 133-36. It forced every holder to swap tokens through Defendants' website within roughly two weeks, or lose them to a permanent burn. *Id.* ¶¶ 92, 98-100. The migration expanded the supply by 33.3% and allocated roughly 3% (about forty million tokens) to "foundation initiatives," immediately unlocked. *Id.* ¶¶ 71, 94. Every other insider tranche was locked or vesting. *Id.* ¶ 94. Only the Foundation's tokens could move on day one. *Id.* ¶¶ 76-78.

Version 3 of the Terms of Use appeared on October 10, 2025. Pasternak Decl. Ex. B. It substitutes the Foundation for B24 as counterparty. *Id.* It requires individual arbitration in the Cayman Islands. *Id.* It purports to reach disputes that "arose before" its effective date. *Id.*; Compl. ¶ 139(d). It sits alongside provisions purporting to waive all claims and disclaim fiduciary duties. Compl. ¶ 139(d).

The Kennedy Declaration attests that the Foundation is a Cayman Islands foundation company with no officers, employees, members, or shareholders. Kennedy Decl. ¶¶ 2-5. A sole Cayman-resident director manages it, overseen by Highvern, a corporate-services provider. *Id.*

## ARGUMENT

## POINT I: THE COURT HAS PERSONAL JURISDICTION OVER THE FOUNDATION; AT MINIMUM, PLAINTIFFS ARE ENTITLED TO JURISDICTIONAL DISCOVERY

### A. The Prima Facie Standard, Before Discovery, Is A Light One

Before jurisdictional discovery, Plaintiffs need only a prima facie showing through allegations construed in their favor. The Foundation's own cases confirm the standard. *Chirag* requires allegations that are "non-conclusory [and] fact-specific." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015). *Jazini* acknowledges the lighter pre-discovery burden. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). The question is whether the Complaint pleads specific facts tying the Foundation to New York conduct. It does.

### B. Paragraph 29 Pleads The *Kreutter* Configuration

The agency rule the Foundation invokes comes from *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988), which found jurisdiction. A Texas principal was reached because a New York actor transacted here "for the benefit of and with the knowledge and consent of" the principal, which "exercised some control" over the activity. *Id.* at 467. The Court of Appeals rejected the fiduciary-shield doctrine in the same decision. *Id.* at 467-72.

Paragraph 29 pleads that exact configuration. The treasury activity was "directed by the Foundation." Compl. ¶ 29. For the benefit element, the New York-executed migration delivered

the Foundation forty million unlocked tokens. *Id.* ¶¶ 71, 94. For knowledge and consent, the treasury and wallet the New York actors managed belong to the Foundation. *Id.* ¶ 18. An entity set up for the purpose of holding this treasury does not lack knowledge of its management.

The Foundation's cases mark the doctrine's limits, and none apply. In *Mau*, the operative agreement affirmatively negated the defendant's control over the New York actor. *Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 55-57 (2d Dep't 2016). In *Edwardo*, a priest's in-state tort of child sexual abuse did not benefit the Catholic Church (to the contrary). *Edwardo v. Roman Catholic Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023) (per curiam). In *Bailon*, the whole agency theory was a logo on someone else's Instagram ad. *Bailon v. Pollen Presents*, No. 22-CV-6054, 2023 WL 5956141, at *5 (S.D.N.Y. Sept. 13, 2023) (quotation marks omitted). Here, the New York conduct was the Foundation's purpose.

The Foundation calls the Complaint contradictory because ¶ 28 alleges Pasternak and B24 "control" the Foundation. The allegations are alternatives, which Rule 8(d)(2) permits. They also converge. Whichever way control runs inside this closed loop, the result is the same: the Foundation's treasury was managed from New York for the Foundation's benefit.

**C. Joint Venture And Alter Ego Independently Support Jurisdiction**

The Foundation's footnote concedes that a co-venturer's New York contacts are imputable. Foundation Mem. at 4 n.3 (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986)). *CutCo* reversed a jurisdictional dismissal. *CutCo,* 806 F.2d at 368. Joint-control allegations sufficed prima facie and the evidentiary showing waited for a "hearing or trial." *Id.* at 366. The Complaint alleges the enterprise, the coordination, and the common executive. Compl. ¶¶ 16, 55. It alleges the division of the economics: platform fees to B24, creator fees to Pasternak, the treasury

and unlocked allocation to the Foundation. *Id.* ¶¶ 54, 79, 94. Under *CutCo*, that suffices at this stage.

The Foundation's own declaration makes Plaintiffs' alter-ego argument. Jurisdictional veil-piercing is "less stringent" than liability veil-piercing. *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 266 (E.D.N.Y. 2014) (quoting *Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 WL 22832384 at *7). It asks whether the entity advances another's interests rather than its own corporate ends. *Id.*

The Kennedy Declaration describes an entity with no officers, no employees, no members, and no shareholders. Kennedy Decl. ¶¶ 2-5. One offshore director, supervised by a corporate-services firm, manages it. *Id.*

Now place that structure beside its pleaded functions. The Foundation holds the Terms, the copyright, the treasury, and the one unlocked allocation. Compl. ¶¶ 18, 94. It did not build the platform, make the statements, or design the migration. It simply receives, offshore, what the New York enterprise generates. Does this structure exist for any purpose other than putting the enterprise's assets beyond the practical reach of American consumers?

## D. At Minimum, Jurisdictional Discovery Is Warranted

Plaintiffs have made far more than a "sufficient start." The documents bearing on direction, benefit, and control exist nowhere else: the Foundation's charter, the Highvern administration agreements, treasury authorizations, and the allocation instructions. Even *Duravest*, the Foundation's own case, dismissed only after evidentiary hearings. *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 632-33, 639 (S.D.N.Y. 2008). Dismissal here, without discovery, would reward the opacity the structure was built to provide.

## POINT II: THE FOUNDATION'S ALTERNATIVE MOTION TO COMPEL
## ARBITRATION FAILS FOR THE SAME REASONS, AND ONE MORE

Plaintiffs incorporate Point I of Opposition No. 1. No arbitration agreement has been shown to exist. The Pasternak Declaration identifies no act of assent by either Plaintiff. Its author is "cannot be 100% certain" the assent screen ever shipped. Pl. Opp. No. 1, Point I.

The Foundation's motion adds a dependency instead of advancing a ready argument. The Foundation is the counterparty only to Version 3. So it must prove more than assent to something. It must prove assent to Version 3 specifically, after October 10, 2025. No evidence shows that anyone, much less either Plaintiff, saw or accepted Version 3.

Version 3 fails on its own terms as well. Consider what it asks a consumer to have accepted after their claims had already accrued. Five days before the migration announcement, the counterparty quietly changed from a New York company to a Cayman foundation with no officers, employees, or members. The new terms would reach backward, capture existing claims, and remove them to a Cayman arbitration venue chosen by the drafter. Compl. ¶ 139(d). The same document purports to waive all claims and disclaim fiduciary duties. *Id.* A retroactive, offshore, drafter-selected forum imposed on consumers mid-collapse would fail for unconscionability. Its enforcement would also offend the public policy of the consumer statutes Plaintiffs invoke. But the Court need not reach any of this unless the Foundation first proves formation and it has not tried.

## POINT III: THE COMPLAINT STATES CLAIMS AGAINST THE FOUNDATION

The Court may address personal jurisdiction and the claims in any order because Plaintiffs prevail for each. But the Court should not reach the merits first as to the Foundation alone. *Chevron*

permits merits-first review only where the ruling would dispose of the action "in its entirety." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012). *Shah* applied that footnote only where the merits ruling resolved the claims against every defendant. *See Shah v. Netflix, Inc.*, 2025 WL 2793703, at *7 (S.D.N.Y. Sept. 30, 2025).

## A. The Complaint Gives The Foundation Exactly The Notice Rule 8 Requires

The Foundation says Plaintiffs "lump" the defendants together, citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). There, a pro se plaintiff never differentiated six unrelated defendants after three amendments and against a court order. *Id.* at 34. This Complaint differentiates.

Pasternak misrepresents. Compl. ¶¶ 70-81. B24 builds and operates. *Id.* ¶¶ 17, 58. The Foundation contracts, holds, directs, and collects. *Id.* ¶¶ 18, 29, 71, 76-77, 94.

The Foundation's own memorandum of law itemizes the "Foundation-specific factual allegations": the Terms and copyright, the treasury and wallet control, and the unlocked allocation. Foundation Mem. at 8 n.5. A defendant that catalogues the allegations against it has notice of them.

## B. The Derivative-Liability Theories Are Adequately Pled

**Joint venture.** On joint venture, the Foundation falsely recites five elements from *Richbell* as: "(i) a specific agreement to carry on an enterprise for profit; (ii) intent to be joint venturers; (iii) a contribution by each party; (iv) joint control; and (v) shared profits and losses." Foundation Mem. at 8.

But *Richbell*'s five elements were actually four: (i) "acts manifesting the intent of the parties to be associated as joint venturers," (ii) "mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge," (iii) "a measure

of joint proprietorship and control over the enterprise," and (iv) "a provision for the sharing of profits and losses." *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 298 (1st Dep't 2003).

The Foundation's addition of "a specific agreement" to *Richbell*'s elements inverts *Richbell*'s holding. It sustained a pleading of a joint venture based on an "implied agreement evidenced by the parties' conduct." *Richbell,* 309 A.D.2d at 297. It did so even where the record negated any completed written agreement because intent "may be express or *implied*" from the totality of the conduct alleged. *Id.* at 297-98 (emphasis in original). And *Richbell* wholly rejected requiring "complete equality among members of a joint venture with respect to each of its required elements." *Id.* at 298.

The pleaded conduct maps to each element. For contribution, B24 supplied the platform, Pasternak supplied the promotion and tokens, and the Foundation supplied the contract, copyright, and treasury. *See* Compl. ¶¶ 16-18. For joint control, there is one alleged chief executive, and a Foundation-owned wallet the others operate. *Id.* ¶¶ 16, 18, 29. On shared economics, fees go to B24, creator fees go to Pasternak, and the allocation goes to the Foundation. *Id.* ¶¶ 54, 79, 94. The totality of their conduct manifests their intent to be associated as joint venturers.

The Foundation's remaining cases, in summary-judgment posture, fare no better for its motion. *Brown v. Cara* construed one memorandum of understanding with a full evidentiary record, and held that skeletal agreements plus conduct can bind. *See Brown v. Cara*, 420 F.3d 148, 157-59 (2d Cir. 2005) (quoting *Richbell*, 309 A.D.2d at 298). The Foundation's quote that "[t]he absence of any one element 'is fatal'" was from a district court's 2004 summary judgment, which used elements contradicted by *Richbell*'s in 2003 and the 2nd Circuit in *Brown v. Cara* in 2005. *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (quoting

*Zeising v. Kelly*, 152 F. Supp. 2d 335, 347-48 (S.D.N.Y. 2001));[1] *see id.* (quoting *Richbell*, 309 A.D.2d at 298). Those same joint-venture claims had twice survived motions to dismiss. *Kidz Cloz*, 320 F. Supp. 2d at 169.

**Alter ego.** On alter ego, the Foundation's cases from the trial stage work against their motion to dismiss. *Passalacqua* reversed a directed verdict because domination was a fact question for a jury. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 140 (2d Cir. 1991). *NYSEG* applied the factors after a bench trial. *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 217, 225 (2d Cir. 2014).

The pleaded profile here is what those factors exist to test: a Cayman Islands entity holding a New York enterprise's treasury with no officers, no employees, no members, no shareholders, and just one offshore director supervised by a corporate-services firm on behalf of someone else, ready to submit a declaration to this court and join Ben Pasternak's and B24's arguments. This profile cannot be resolved against Plaintiffs on the pleadings. A New York jury must deliver their verdict.

**Agency.** As for agency, the Foundation characterizes pleadings in the alternative as a "flip-flop." As they identify, Paragraph 29 pleads direction running from the Foundation to the New York actors. That is the direction the motion's cases require. *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-30 (2d Cir. 2019); *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979).

---

[1] The Foundation does not indicate that its quote is itself a quote of a 2001 district-court decision which predated *Richbell* in 2003.

## C. The Merits Arguments The Foundation Joins Fail For The Reasons Stated In Opposition No. 1

The Foundation adopts its co-defendants' standing and 12(b)(6) arguments wholesale. Plaintiffs incorporate Points II and III of Opposition No. 1.

The unjust-enrichment claim runs against the Foundation with particular force. Its principal pleaded benefit, forty million immediately unlocked tokens, came directly from the challenged migration. Compl. ¶¶ 71, 94. That benefit was extracted at class members' proportional expense and is traceable on-chain. *Id.* ¶ 168.

Forcibly extracting value from Plaintiffs' accounts is a direct relationship, not an attenuated one. *Cf. Ga. Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516–19 (2012) (dismissing unjust enrichment claim against a defendant with "no dealings" with plaintiff and only "arm's length business interactions" with other defendants).

And in *Barron*, the token case B24 & Ben Pasternak cite, that court explained: *Georgia Malone*'s rule "does not mean that the parties need to have a direct relationship. *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018). Rather, it means that at a minimum there is at 'least an awareness by [the defendant] of [the plaintiff's] existence.'" *Barron v. Helbiz Inc.*, 2023 WL 5672640 at *18 (S.D.N.Y. Sept. 1, 2023) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)).

It strains credulity to believe that the Believe Foundation was not aware of how or from whom 40 million coins fell into its hands.

## POINT IV: IN THE ALTERNATIVE, LEAVE TO AMEND AND JURISDICTIONAL DISCOVERY

Any dismissal should be without prejudice and with leave to amend, for the reasons stated in Point V of Opposition No. 1.

Plaintiffs also intend to seek leave to add a common-law fraud claim. The same-day allocation to the Foundation, which falsified Pasternak's public lockup statement the day he made it, will be pleaded as scheme evidence. If the Court has any doubt on jurisdiction, the answer is the discovery described in Point I.D, not dismissal.

## CONCLUSION

The Court should deny the Foundation's motion in its entirety. In the alternative, it should grant jurisdictional discovery as to the Foundation, a formation trial or discovery on arbitration as set forth in Opposition No. 1, and leave to amend.

Respectfully submitted,

BURWICK LAW, PLLC

By: /s/*Rylan Maksoud*
Max Burwick
Rylan Maksoud
43 West 43rd Street, Suite 114
New York, NY 10036
Tel: (646) 762-1080
max@burwick.law
rylan.maksoud@burwick.law

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum of law complies with the applicable word-count limitation because it contains 2,905 words, including

footnotes and excluding the caption, table of contents, table of authorities, signature block, and this certificate. The undersigned relied on the word count of the word-processing software used to prepare this memorandum.

/s/ Rylan Maksoud

Rylan Maksoud
